Case number 24-1332, Western District of Missouri, Kari Beck et al. v. United States. All right, Mr. Schermerhorn, we'll hear from you first. Thank you, Judge, and may it please the Court. In 2015, when he was just 22 years old, Staff Sergeant Cameron Beck made the selfless and courageous choice to serve in the United States Air Force. But this case, this accident, has nothing to do with Sergeant Beck's military service. Instead, this case is about a tragic but otherwise very ordinary car accident. In April of 2021, when he was 29 years old, Sergeant Beck was killed when Blanca Mitchell, a civilian government employee, crashed into him while he was returning home to have lunch with his wife and then seven-year-old son. The government charged, and Ms. Mitchell admitted that she carelessly turned into the path of Sergeant Beck's motorcycle because she was distracted by her cell phone. She is the sole cause of the accident. Thus, as the District Court below observed, the claims in this case are not the type that, quote, implicate military management or otherwise intrude upon sensitive military affairs. Indeed, no military action or decision is being challenged by the plaintiffs in this case. The plaintiff's sole contention is that Blanca Mitchell was negligent when she turned into the path of Sergeant Beck. In this respect, this case is identical to and should be governed by the Brooks case. Now, the government argues, and the District Court accepted, that since Sergeant Beck was on base and on duty at the time of the accident, the government is immune from liability, regardless of whether the claim here is the type that calls into question a military decision. But the Supreme Court's decision in Shearer expressly stated that such factors, time, location, activity, are not, quote, not nearly as important as whether the suit requires the civilian court to second-guess military decisions. What about the statutory benefits? If I understand it right, the family here did receive statutory benefits. In the original Ferris case, the Supreme Court articulated three rationales for why it was granting this kind of immunity. Right. That's my concern. The Johnson case then talks about how the existence of these generous benefits is an, quote, independent reason why the Ferris doctrine bars the suit there. Yeah, it's true. So is that true? In other words, independent of whether you have to get into sensitive military matters? I don't believe so, but I think there's a difference between the rationales for why Ferris exists, which the Supreme Court set out in the Ferris case itself, and the criteria for applying Ferris. And so the Supreme Court has repeatedly articulated these three rationales, one of them being that there is this ability to recover.  Well, my concern is that, at least in Johnson, they called it an independent reason, as opposed to one of a multi-factor balance. Again, I think what they're saying, even in Johnson, is that these benefits provide a rationale for Ferris, but not a separate test for its application. And the reason I say that is in the Brooks case, it's never been overruled. And the Supreme Court's made clear that Brooks has not been overruled. There, the service members received those same benefits, and they were allowed to recover. And in Shearer, what the Supreme Court said about that is what distinguished Brooks in the Brooks case? The court said, well, they were off base, off duty. Later, the Supreme Court said, but what really distinguished Brooks from these other cases is that it was not the type of claim in which the civil court will sit in plenary review over a military decision. And every single one of those cases is a military decision.  I'm sorry. I just don't read Shearer the way you do. Judge, I will. I'm sitting here looking at it. I didn't think it sounded right. Sure. The emphasis you put on the factor you. Yeah, I was just going to, under section B, in the Shearer case, page 58, paragraph begins, Respondents' case is therefore quite different from Brooks, where the court allowed recovery under the Tort Claims Act for injuries caused by a negligent driver of a military truck. Then it goes on to say, unlike the negligence alleged in the operation of a vehicle, the claim here would require Army officers to, quote, testify in court as to each other's actions and decisions. So in our view. All right. But before that, they just say whether the suit might impair essential military discipline was a factor. Not that it's the most important factor, and without it, the government has no immunity. Well, I think what they do say, or at least how I read it. Now, I agree that these cases are. Well, I don't think it overruled our Miller case. And Miller is an in-bank Eighth Circuit decision, which the briefs completely ignore. Well, I. So it is controlling on our panel unless the Supreme Court has clearly either overruled it or ruled it inconsistently with it. And I don't think we ignored Miller. I certainly didn't hope to. You managed to downplay it and put it on a list of parallel Eighth Circuit decisions, all of which should be trumped by Scheer. That's the way I read your brief. Well, the way I intended that the brief should be read, certainly, Judge, was that, you know, Miller was decided, I think, in 85, or even before that. And there's been a series of cases from the Supreme Court and from this court, which. In our view. In this court, inconsistent with Miller, I can guarantee you that. I'm sorry? Miller was an in-bank court authored by Richard Arnold, who was the dissenter on a panel that went the way you're arguing.  And the in-bank court reversed, overruled the panel. And you're citing Eighth Circuit cases after Miller that you claim have supplanted or somehow changed our law from Miller. That we cannot accept. I don't think I'm suggesting that Miller should be overruled or has been overruled. No, you just said. We just said look at our subsequent decisions. The inference being they're inconsistent with Miller. I don't think so. The way I read Miller is the way I read all these other decisions, which is that in Miller itself, the court identified an actual military decision that was being questioned, that would be questioned. In that case, the plaintiff didn't allege that some civilian employee did something wrong. The plaintiff alleged that the government was negligent. First, Private Miller was on active duty. He was not on leave, pass, or furlough. The injury occurred on a military base to which he was assigned, and the work he was doing, though not under immediate supervision, was related to the military mission of the base. He remained at all times subject to immediate recall for military duty. His survivors are entitled to compensation. The government's immune. Judge, I have no qualms with any of what you just said. How is it different? That's his case. Well, I don't view it that way. Here, in that case, in Miller. Why not? Why not? I view it as the same. I guess I would say this, and I see I have very little time left, so let me answer this question and then I'll reserve some time for rebuttal. In Miller, just like in every other case, the activity was related, not solely because he was on base and on duty, and Miller says that itself. The Miller on-bank panel said we do not hold, nor need we hold, that every case was. . . In my view, the fact that he happened to be going home for lunch is irrelevant on this question. Flat out irrelevant. Judge, and I can grant you that and still win, because the argument I'm making is not that because he was going home for lunch, the government should be liable. The argument I'm making here is that the claim is not the type for which Ferris applies under Miller or any other standard, because even in Miller, in every other case, every case decided in Miller, on down the line, has involved a claim in which the government is alleged to have been negligent, where you can imagine at a civil trial that the government witnesses will be called to testify. Here, we don't have that at all. Unless you have another question, I'll reserve my time for rebuttal. We have a civilian government employee. Which distinguishes this case from Miller. Not a whole lot. Well, I think that is important. If she had not been a civilian government employee, if she was a member of the military, well, then I think Miller in every other case would apply. What if she's a contractor working at the base? But she is not. . . There have been cases like that. There have been cases in which contractors working on base were negligent parties, but where the claim itself was against the military for having failed to do something to stop that worker. Here, no such claim. No such claim. There's no claim against the government in this case. Only a government employee. Judge, I see my time is up. It's a hard case. I understand. I appreciate your time. Thank you, Judge. Thank you for your argument. Mr. Sturgill, we'll hear from you. Good morning. May it please the Court. I'm Lowell Sturgill from the Department of Justice, representing the United States. Staff Sergeant Cameron Beck served this country honorably and well. His death is a tragic event for the Air Force as well as his family and friends. Nevertheless, the district court correctly dismissed this case, pursuant to Ferris' doctrine, and found that the Miller case, which you've been discussing, is, the Court said, particularly instructive, and we think that's right. And the key fact, the in-bank court said in Miller, for why Ferris applied, is that Miller could have been ordered to perform military duties at all times while on base, even though he was off duty. That's at 643 F. 2nd, 494. So those same key facts are present here. Staff Sergeant Beck was present on base under orders to live and work there. He was off duty at the time, but he was not on leave. He was not on any kind of long four-day weekend pass that, in some cases, has led the Court not to apply the Ferris doctrine, leave indifferent or pass, and that's why the Brooks case that my friend has cited is distinguishable. In Brooks, the service member was on leave. At the time of the accident, he was off base, and his car accident had nothing whatsoever to do with the military. Here, Miller talked about the fact that on-base injuries that arise out of life on the military reservation, and that's what happened here. Staff Sergeant Beck was working on base. He went home for lunch to his on-base quarters where he had been assigned, and so his injury arose out of life on the military reservation. What about the fact that, in Miller, the allegation was the government had been negligent in managing the ladder and so forth, whereas here the plaintiff says no claim against the government, no involving the government as a defendant or witnesses and so forth. Is that an important distinction? So it isn't, Your Honor. When the Inbank Eighth Circuit says something is key, we take them at its word, and at page 494, the court said the key fact is that Sergeant Miller was on base. He was subject to recall for active duty at any time, immediately subject to recall for active duty. So key means key, and certainly the court said some other confirmatory. Do you have another case where a private party is on the base, around a military facility, with the military's permission, and commits an act of negligence and the immunity is claimed? So the Watkins case, Watkins was a Fifth Circuit case, and it was cited with approval by the Supreme Court in Johnson. Johnson is the Supreme Court's most recent fair decision, and in Watkins, the plaintiff was injured when his motorcycle was hit by a civilian driver on base. There's no mention in the court's opinion in Watkins that there was any allegation of military negligence, and yet the Fifth Circuit applied the fairest doctrine, and the Supreme Court in Johnson cited Zula with approval. I would also refer the court to this court's own decision in Cutshall v. United States, 75 F. 2nd, 426. In that case, it was a medical malpractice case, this court applied the fairest doctrine, where the district court had found that there would be no impact on military decision-making. Which case? Cutshall? Cutshall, C-U-T-S-H-A-L-L. That's a case, again, that the district could have found no impact on military decision-making, and this court said, fair is applied, and said it doesn't even matter whether it would or wouldn't have, because medical malpractice is clearly incidental service. So Cutshall is another case that I think is responsive. Actually, the plaintiffs have not cited one case, and I'm not aware of a single case, where any court of appeals in the country has ever allowed a fairest doctrine case to go forward for an on-base injury, where somebody was on active duty at the time, and they were injured on a part of the base that was controlled by the military and wasn't open to the general public. There are no cases like that. So if you were to allow this case to go forward, you would create a split in the circuits and depart from... How would we create a split in the circuits if there's no other case involving the civilian? Because all the other cases, no cases allow that kind of a claim, but there are numerous cases that have said that those claims cannot go forward. What numerous? You're referring to numerous cases in which the government was allegedly negligent. Well, Cutshall, well, Zula, first... The only case you've mentioned is Watkins, which I don't have in front of mind, but... in Johnson. There, the plane was injured by a federal employee who looked to be a civilian from what all I can tell. So that's another case...  And Johnson itself, if I could, Johnson itself involved negligence, alleged negligence by the FAA, not by the military. The allegation was the military personnel rescue mission, the FAA negligently performed its duties, and the plane went down on the high seas. And the court said even though there was no military negligence alleged, the claim could not go forward. It's a civilian-alleged negligence. So, and again, Johnson is the Supreme Court's most recent word on the FARA's doctrine. The plaintiffs rely pretty much exclusively on the Shearer decision. I know you all have discussed that already in the opening argument. But in Johnson, the Supreme Court rejected the exact reading of Shearer that the plaintiffs are urging upon you here. If you look at the Johnson opinion at page 684, the opinion describes what the Eleventh Circuit had done there. And if you don't mind me reading briefly, the court said, the Eleventh Circuit found no hint that the conduct of any alleged tortfeasor, even remotely connected to the military, will be scrutinized if the case proceeds to trial. And the Supreme Court of Johnson said that's not the right test. We're not going to allow the Court of Appeals to reimagine the FARA's doctrine this late date. Instead, they applied the traditional incident to service test. This is the Eleventh Circuit test. It's the exact same test that they're asking you to apply here. It's not the correct test. Instead, it's the incident to service test. It depends on the totality of circumstances. And again, under Miller, we know that where the service member is injured on base, while only off duty as opposed to on leave, and the injury occurs out of life on a military reservation, then FARA's doctrine applies. You mentioned that the plaintiff is receiving extensive military benefits. That is a reason why, and actually my friend, I think, said this correctly. The three rationales for the FARA's doctrine are just that. They're reasons why the FARA's doctrine exists and is proper. They're not the test. So what cases like Weatherill from this circuit, and Miller, and Cutshall, and any number of cases from other circuits explain, and Johnson itself explains, is you don't look to the rationales to determine whether FARA's applies in a particular case. So what instead you look at is the incident to service test. Now, sometimes courts will refer to the rationales as additional reasons in confirming why it makes sense to apply the FARA's doctrine to a case. That's perfectly reasonable. But courts like the Supreme Court. Sure, exactly. And that's, right, that's perfectly fine. But those are confirmatories. Well, then we have to interpret whether they were doing that or whether they were tweaking the test itself. Absolutely right. But I think Johnson is as clear as day on that. Because, again, we know what the Eleventh Circuit said, and the Supreme Court said no. It said you don't look to that rationale. And Cutshall is very important here. Because Cutshall said Johnson departs from a counting of rationales approach under FARA's. That's 75 F second at 428. So this court has been down this road already multiple times in Miller, Cutshall, Weatherill, any number of other cases. The Supreme Court has told us what the answers are. They've cited cases directly on point involving automobile accidents involving that were caused by civilians where no military negligence was applied. That wouldn't be Miller. That wouldn't be Miller. But maybe some of the others. Correct. My time has almost expired. I'd be happy to try to answer any questions. Okay. Thank you for your argument. Thank you. Did your time expire? Did his time expire? Yes. I believe your time has expired. But we appreciate the arguments, and the case has been well briefed, so we'll take it under advisement. The case is submitted, and the court will file a decision in due course.